Filed 4/17/23  P. v. Radillo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OSCAR RADILLO,<br><br>Defendant and Appellant. | F083848<br><br>(Super. Ct. No. 15CR-06414)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Paul C. Lo, Judge.

Lillian Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2016, appellant Oscar Radillo was charged with arson of an inhabited structure (Pen. Code,[1] § 451, subd. (b), count 1); making criminal threats (§ 422, subd. (a), count 2); and false imprisonment by violence (§ 236, count 3). Radillo entered a plea of no contest to counts 1 and 3. The trial court subsequently found Radillo mentally incompetent, accepted his alternative plea of not guilty by reason of insanity, and ordered Radillo committed to the Department of State Hospitals "for a maximum period not to exceed eight (8) years eight (8) months."

In 2021, Radillo filed a motion to withdraw his plea. The trial court granted Radillo's motion, finding that he was not advised that his term of commitment may exceed the longest possible term of imprisonment for the underlying crimes. (See *People v. Lomboy* (1981) 116 Cal.App.3rd 67.)

The trial court indicated it would sentence Radillo to the upper term. Radillo reentered his plea of no contest to arson (§ 451, subd. (b)) and false imprisonment by violence (§ 236).

On January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill No. 124) went into effect. Following the enactment of Senate Bill No. 567, a trial court may impose an upper term sentence only if the aggravating circumstances justify its imposition, and the facts underlying those circumstances have been proven consistent with the statute. In turn, Assembly Bill No. 124 established a presumption that the trial court will impose the low term if certain circumstances were contributing factors to the commission of the crime.

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

On January 27, 2022, following argument by the parties, Radillo was resentenced to the upper term of eight years for arson, and a consecutive term of eight months for false imprisonment by violence.

On appeal, Radillo contends that the trial court failed to comply with Senate Bill No. 567 and Assembly Bill No. 124, and that he is entitled to a new sentencing hearing. We affirm.

## PROCEDURAL HISTORY

On August 8, 2016, the Merced County District Attorney charged Radillo by information with arson of an inhabited structure (§ 451, subd. (b), count 1); making criminal threats (§ 422, subd. (a), count 2); and false imprisonment by violence (§ 236, count 3).

On November 29, 2016, Radillo entered a plea of no contest to arson and false imprisonment by violence. Count 2 was dismissed in view of Radillo's plea. Radillo also plead not guilty by reason of insanity. Following a bench trial, the court found Radillo was legally insane at the time of the offense and that he had not fully recovered.

On February 9, 2017, the court committed Radillo to the State Department of State Hospitals "for a maximum period not to exceed eight (8) years eight (8) months."

On November 18, 2021, the trial court granted Radillo's motion to withdraw his plea of insanity, finding that Radillo had not been advised pursuant to *People v. Lomboy*, *supra*, 116 Cal.App.3rd 67. The court reinstated Radillo's no contest plea and indicated that it would impose the upper term in state prison.

On January 27, 2022, the trial court held a sentencing hearing. Following argument by the parties, including a discussion of mitigating and aggravating factors relevant to Senate Bill No. 567 and Assembly Bill No. 124, the court sentenced Radillo to the upper term of eight years for arson, and one-third the middle term of eight months for false imprisonment by violence, to run consecutively.

Radillo filed a timely notice of appeal.

## STATEMENT OF FACTS

### *The Underlying Offense*

The following statement of facts is derived from the reporter's transcript from Radillo's preliminary hearing, which occurred on July 25, 2016:

On November 27, 2015, Radillo, schizophrenic and delusional, accused his father, R.R., of poisoning his food. Radillo spilled food all over his bed. When his father questioned him about it, Radillo began to get angry. R.R. tried to leave the room, which further angered Radillo. Radillo told his father, " 'You going nowhere.' " As R.R. tried to leave, Radillo punched him in the mouth. When R.R. moved to another door, R.R. punched him in the ribs. R.R. eventually managed to get out of the house as Radillo said, " '[T]his is a warning. Next time I kill you.' "

R.R. went into a nearby field and called the police. As he waited for the police to arrive, he saw smoke coming from his home. R.R. tried to put the fire out, but he was unsuccessful. The house burned down.

### *The Mental Health Report*

A report prepared pursuant to section 1026, subdivision (f) was made part of the record.[2] The report, dated December 6, 2021, states that since the last progress report, there were minimal changes to Radillo's status. According to the report, Radillo "continues to lack insight into his mental illness and need for treatment."

Under "*Psychiatric status*," the report states that Radillo "has remained psychiatrically unstable," and that he "has primarily been experiencing chronic delusional beliefs about women and religion."

---

[2]     Section 1026, subdivision (f) provides: "If the defendant is confined in a state hospital or other treatment facility as an inpatient, the medical director of the facility shall, at six-month intervals, submit a report in writing to the court and the community program director of the county of commitment, or a designee, setting forth the status and progress of the defendant."

Radillo stated that he wanted " 'to sleep with 1000 women and save them from going to hell' " and he had been exercising daily for this purpose. Radillo commented that women " 'are she-devils who will make [him] sacrifice animals, but [he] will have to do it because they will make [him]. It says so in the Bible.' " He also stated that these women would make him " 'burn incense to summon demons.' "

The report notes that Radillo has not engaged in any assaultive behaviors and that he has generally been pleasant and followed directions. However, while he has been willingly taking his medication, he was refusing to participate in any program that he perceived to be treatment. The report states that Radillo "does not believe he has a mental illness … and he has not been motivated to attend groups."

Under "VIOLENCE RISK ASSESSMENT," the forensic evaluator concluded that "[i]f Mr. Radillo were to be moved to a different setting (e.g., prison, CONREP, straight release, etc.), the severity of his symptoms and his limited coping abilities would increase his risk for being a danger to others, and it would also increase his risk for victimization (e.g., sexual exploitation)."

### The Sentencing Hearing

On January 27, 2022, the trial court held Radillo's sentencing hearing. The hearing occurred after Senate Bill No. 567 and Assembly Bill No. 124 went into effect, and therefore, applied prospectively to Radillo's sentence.

At the hearing, Radillo's family addressed his history of mental health issues, and claimed that he had suffered mental and physical abuse as a child. Radillo's brother told the court that he would assume responsibility for Radillo's care if Radillo were to be released, with support from other family members.

Trial counsel discussed Senate Bill No. 567 and Assembly Bill No. 124, and the application of these newly enacted laws to Radillo's sentence. She explained that Senate Bill No. 567 "require[s] the Court to impose a term of imprisonment not exceeding the middle term unless there are circumstances in aggravation that have been either stipulated

5.

to by the Defendant or found true beyond a reasonable doubt at trial by a jury or a judge in a court trial." Trial counsel added that the trial court would presumably be able to base factors in aggravation and mitigation of Radillo's sentence upon the preliminary hearing transcript, and reports and statements submitted by the defense or the victim (R.R.) and the victim's family. Trial counsel stated, "[n]othing at this point has been stipulated to by the Defendant as to specific aggravating factors, but I believe the Court has reviewed the preliminary hearing transcript. That included the testimony of his father, who is essentially the victim or complaining witness in this case."

Trial counsel observed that two factors in aggravation arguably applied, including: Radillo's threat to his father, which may constitute a "threat of great bodily harm" (Cal. Rules of Court, rule 4.421(a)(1)[3]), and the destruction of R.R.'s home, which would likely qualify as damage of "great monetary value" (rule 4.421(a)(9)). However, she emphasized that there were multiple mitigating factors applicable, including: the fact that Radillo had no prior criminal record (rule 4.423(b)(1)); he was suffering from schizophrenia, which was documented by family members and mental health reports (rule 4.423(b)(2) & (4)); he voluntarily acknowledged wrongdoing at an early stage (rule 4.423(b)(8)); and that he is ineligible for probation, and but for his ineligibility, probation would likely have been granted (rule 4.423(b)(9)).

Trial counsel further observed that section 1170, subdivision (b)(6), added by the enactment of Assembly Bill No. 124, required the court to impose the low term of incarceration if Radillo's youth was a contributing factor to the offense. Under the statute, "youth" is defined as being under the age of 26 at the time of the offense. (See § 1016.7.) Radillo was 20 years old when the crime occurred.

With respect to Radillo's mental health issue, trial counsel stated that the court was permitted to consider the mental health report from the Department of State

---

**3** All further rule references are to the California Rules of Court.

6.

Hospitals in its sentencing decision and she referred to findings within the report throughout her argument. Trial counsel acknowledged that Radillo had made statements that were "delusional and concerning," and admitted that "he's not in remission at this time." However, she opined that he did "not appear to be acting on these [delusions] in any way that creates a risk to himself or others." Trial counsel remarked, "[Radillo] is medication compliant and these delusions don't seem to have led to any actual issues."

According to trial counsel, "[t]he big concern here really is, if he gets upper term, he will still have time left in prison and he will go to [the California Department of Corrections and Rehabilitation]." Trial counsel added that the California Department of Corrections and Rehabilitation (CDCR) lacks significant mental health treatment. Alternatively, if Radillo were to be released, she asserted that Radillo could participate in an outpatient treatment program, which his family was committed to.

The prosecutor agreed that the trial court could take the mental health report into consideration in its sentencing decision. He explained the report could be considered under factors that reasonably relate to the defendant. (See rule 4.421(c) [the court can consider "[a]ny other factors statutorily declared to be circumstances in aggravation or which reasonably relate to the defendant or the circumstances under which the crime was committed"].)

The prosecutor characterized the hospital report as "concerning." The hospital report stated that if Radillo were moved into a different setting, " 'the severity of his symptoms and his limited coping skills would increase his risk for being a danger to others, and it would also increase his risk for possible victimization.' " According to the prosecutor, the hospital report demonstrated that if Radillo were to be released, he would be a danger to his family and to the community.

Following the parties' arguments, the trial court concluded that imposition of the upper term of eight years was warranted, finding the factors in aggravation outweighed the factors in mitigation. The trial court found that the threat of harm to R.R. had been

significant, and the court expressed concern about releasing Radillo to his family and into the community. The trial court explained, "the Defendant does not have any insight and appreciation that he has a mental health issue and he does not acknowledge that." Further, "although he does take medication, he does not participate in any therapy." The trial court stated that Radillo's expressed desire to be released so that he could "sleep with a thousand women" was "very concerning." The court observed that Radillo had been taking active steps to carry out that delusion, including working out every day.

## DISCUSSION

### I.     Radillo is Not Entitled to Resentencing Pursuant to Senate Bill No. 567

Radillo contends that neither of the aggravating factors upon which the trial court relied in imposing the upper term were stipulated to or found true beyond a reasonable doubt, which is required following the enactment of Senate Bill No. 567. The Attorney General contends that the trial court substantially complied with amended section 1170, subdivision (b) because Radillo stipulated to certain facts, but that the court's findings of fact, which did not comply with the statute, constitutes harmless error.[4]

We conclude that the trial court failed to fully comply with amended section 1170, subdivision (b). Radillo did not stipulate to all relevant facts supporting the aggravating factors relied upon by the trial court, nor were these facts found true beyond a reasonable doubt by a jury or by the judge. However, in light of the strong evidence presented at the sentencing hearing supporting the aggravating factors relied upon by the trial court in imposing the upper term, we further conclude that the error is harmless.

### A.     Relevant Legal Principles

On October 8, 2021, Senate Bill No. 567 was signed into law. The new law amended the determinate sentencing law, section 1170, subdivision (b), which delineates

---

[4]     The parties do not argue that an implied waiver of the right to a jury trial on the circumstances in aggravation is sufficient under the statute. We therefore presume that an express waiver is required.

8.

the trial court's authority to impose one of three statutory terms of imprisonment, by making the middle term the presumptive sentence for a term of imprisonment, unless certain circumstances apply. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).)

Effective January 1, 2022, the trial court may impose an upper term sentence only where there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or a trial court if the defendant has consented to a court trial. (§ 1170, subd. (b)(2).)

Either party, including the victim or the victim's family, "may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts." (§ 1170, subd. (b)(4).) The trial court may consider "the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (*Ibid*.) The trial court must "set forth on the record the facts and reasons for choosing the sentence imposed." (*Id.*, subd. (b)(5).)

**B.    Analysis**

**1.    The Aggravating Factors Found True by the Trial Court**

**a.  *The Crime Involved a Threat of Great Bodily Harm (Rule 4.421(a)(1))***

At the sentencing hearing, trial counsel stated that the court could consider the reporter's transcript from the preliminary hearing for purposes of section 1170, subdivision (b)(2). Radillo contends that this was not a stipulation to the truth of all facts therein. (See *People v. French* (2008) 43 Cal.4th 36 [when entering a plea, "[a]

9.

defendant is not required to personally admit the truth of the factual basis of the plea"]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 235, quoting *People v. French*, at pp. 51-52 ["absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[ ] a binding admission for all purposes' "].)  The Attorney General does not suggest as much.

Moreover, while trial counsel suggested that this aggravating circumstance *may* apply, her assertion fell short of a clear concession.  Trial counsel argued, "while there maybe were threats made ahead of time, this is not a situation where [Radillo] attempted to burn the building down with his father inside of it.  [¶ ]  So, arguably, factor (a)(1) applies, but I do think there's caveats to that as well."  Trial counsel's statement falls short of a clear admission that the threat to which she was referring involved a threat of great bodily harm (see rule 4.421(a)(1)).  Based upon the foregoing, we conclude that the trial court erred by finding this factor true without complying with amended section 1170, subdivision (b).

### b. *The Risk of Harm Radillo's Release Would Pose to the Community and to His Family (Cal. Rules of Court, rule 4.421, subd. (c))*

As to the second aggravating factor, pertaining to Radillo's threat of harm to the community and his family, trial counsel did not stipulate that this factor applied. However, throughout her argument, trial counsel referred to facts relevant to this aggravating circumstance.

She acknowledged that Radillo had suffered from delusions and that he was "not engaging in treatment."  She emphasized that if Radillo were to receive the upper term sentence of eight years, he would have to serve his remaining time at CDCR.  Trial counsel claimed that CDCR lacks significant mental health treatment programs. Alternatively, if Radillo were to be released by imposition of the middle or lower term, she suggested that he could participate in an outpatient treatment program.

10.

The trial court took these facts into consideration in concluding that the upper term was warranted.  Under the circumstances, we see no reason why trial counsel's acknowledgment of the delusions experienced by Radillo, in addition to the fact that he was not treatment compliant, should not be treated as an admission to these facts.  (See *People v. Jackson* (2005) 129 Cal.App.4th 129, 161 ["[o]ral statements of counsel may be treated as judicial admissions if they were intended to be such or reasonably construed by the court or the other party as such"].)  Although trial counsel's statements lack the formality of an oral stipulation, they were neither improvidently made nor inconsistent with her argument that the court should impose a mitigated sentence.  Additionally, it strains credulity to accept trial counsel's statement of the facts pertaining to Radillo's mental health issues on one hand, but to simultaneously conclude that this should not be deemed an admission to these same facts on the other.

We acknowledge that in explaining its sentencing decision, the trial court referred to facts within the mental health report that were not explicitly admitted by trial counsel at the sentencing hearing.  Specifically, the fact that Radillo lacks insight into both his commitment offense and his mental illness, as well as his delusions pertaining to women, specifically, his expressed desire to be released so that he could "sleep with 1,000 women."  However, the parties below agreed that the trial court could rely upon findings within the mental health report in making its sentencing decision, and the parties do not contest this on appeal.  The mental health report and the facts admitted by trial counsel provide strong evidence that Radillo poses a threat of harm to the community if he were to be released.  As discussed further below, we conclude that any error by the trial court in relying upon facts not admitted by trial counsel is therefore harmless.

### 2. *Harmless Error*

There is a split of authority concerning what prejudice standard applies when a trial court relies upon facts not stipulated to or found true beyond a reasonable doubt by either a jury or the court.  In *People v. Flores* (2022) 75 Cal.App.5th 495, our colleagues

11.

in the First District Court of Appeal, Division Three, held that resentencing following Senate Bill No. 567 is not required if the reviewing court can determine beyond a reasonable doubt that the jury would have found true at least one aggravating circumstance. (*People v. Flores, supra*, at p. 501.)

In *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*), the Fourth District Court of Appeal, Division One, concluded that harmless error may be found where the reviewing court can either (1) determine beyond a reasonable doubt that the jury would have found true *all* the aggravating factors the trial court cited, or if not, (2) conclude, "to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836," that the trial court would have reached the same decision even if it knew it could not properly rely on all the factors it did. (*Id.* at p. 467, fn. 11; but see, *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982, review granted Sept. 28, 2022, S275942 [applying the first prong of *People v. Lopez* but stating, as to the second prong, "whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term"].)

In *People v. Zabelle* (2022) 80 Cal.App.5th 1098, the Third District Court of Appeal set forth the following test for harmless error: the reviewing court must (1) identify one aggravating factor relied upon by the trial court that would have been found true by the jury beyond a reasonable doubt; and (2) for the remaining factors, determine whether it is reasonably probable that a jury would have found the remaining aggravating factors true. (*Id.* at pp. 1110-1113.) With the aggravating factors that survive, the reviewing court must determine "whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Id.* at p. 1112.)

Finally, in *People v. Dunn* (2022) 81 Cal.App.5th 394 (review granted Oct. 12, 2022, S275655 (*Dunn*)), this court described a two-step process: "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one

aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (*Id.* at pp. 409-410, fn. omitted.)

The question of what prejudice standard applies when a trial court fails to comply with Senate Bill No. 567 is currently pending before our Supreme Court. (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.) Notwithstanding, we are persuaded that under any standard, the trial court's error is harmless.

First, with respect to the trial court's finding that Radillo poses a risk of harm to the community and to his family, the record amply supports this conclusion. The mental health report was made part of the record on appeal. The parties' comments summarizing the report and the trial court's statements concerning findings within the report accurately reflect its contents. Indeed, even trial counsel acknowledged the truth of some of the findings in the report, including, the fact that Radillo was experiencing significant delusions, he was not engaging in treatment, and he was not in remission from his mental health issue despite being medication compliant. Significantly, the mental health report indicates that if Radillo "were to be moved to a different setting (e.g., prison, CONREP, straight release, etc.), the severity of his symptoms and his limited coping abilities would increase his risk for being a danger to others."

13.

Whether a defendant poses a significant danger to the community is generally a subjective assessment. "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840.) Here however, given the strength of the evidence in the record, which was undisputed by the parties, we are confident that a jury would have found this factor true beyond a reasonable doubt.

As to the second aggravating circumstance, we need only conclude that there is a reasonable probability that either the jury would have found this factor true beyond a reasonable doubt (see *Dunn*, *supra*, 81 Cal.App.5th at pp. 409-410), or alternatively, that the trial court would have made the same sentencing decision if it knew it could not rely upon this factor (see *Lopez*, *supra*, 78 Cal.App.5th at p. 467). We are convinced that this factor has been established under either standard.

During a physical confrontation provoked by a paranoid delusion, Radillo beat and then threatened to kill his father. After his father fled the home, Radillo burned his house down. These facts were uncontested by trial counsel at the sentencing hearing.[5] Although R.R. did not actually sustain great bodily injury during the incident, that does not foreclose application of this aggravating factor. (See, e.g. *People v. Edwards* (1981) 117 Cal.App.3d 436, 445-446 [a direct verbal threat to kill the victim could be used as a factor in aggravation of the defendant's sentence].) From the record, we conclude there

---

[5]     *Dunn* makes clear that step (1)(a) is satisfied if the trial court "relied upon an aggravating circumstance that relied only upon the fact of defendant's prior convictions and a certified record of defendant's convictions was admitted, *or defendant admitted the facts underlying an aggravating circumstance*." (*Dunn*, *supra*, at 81 Cal.App.5th at p. 410, fn. 13, italics added.)

is a reasonable probability that a jury would have found this factor true beyond a reasonable doubt.  (See *Dunn*, *supra*, 81 Cal.App.5th at pp. 409-410.)

However, even assuming the trial court could not rely upon this factor, the record supports that conclusion that the trial court would not have imposed a sentence other than the upper term based upon its finding that Radillo's release would pose a risk of harm to the community and to his family.  (See *Lopez*, *supra*, 78 Cal.App.5th at p. 467.)  The record shows the trial court placed great weight upon this factor.  The balance of the trial court's statements explaining its sentencing decision pertained to Radillo's mental health, his apparent need for continued treatment in a structured environment, and the threat his release would pose to the public safety and Radillo's family.  Moreover, the court explicitly stated, "the issue really is for the Court, … what would be the risk to the community and to the family if [Radillo] is to remain outpatient, out of custody."

All things considered, even if the trial court did not consider the fact that the underlying crime involved a significant threat of harm to Radillo's father, we conclude there is a reasonable probability that it would have imposed the upper term based upon its finding that Radillo's release would pose a threat of harm to the community.  (See *Lopez*, *supra*, 78 Cal.App.5th at p. 467.)  We therefore conclude that the trial court's failure to fully comply with Senate Bill No. 567's requirements is harmless error.

Radillo claims it is not possible for this court to conclude that a trier of fact would have found either of the aggravating factors to be true beyond a reasonable doubt.  He contends the aggravating factors relied upon by the trial court "concern matters about which [he] did not have the chance to offer evidence."

A reviewing court cannot ordinarily assume that the existing record reflects all of the evidence that would have been presented had the aggravating circumstances been submitted to the jury.  (See, e.g., *People v. Sandoval, supra,* 41 Cal.4th at p. 840 ["[c]ounsel's strategy might have been different had the aggravating circumstances been tried under a beyond-a-reasonable-doubt standard of proof to a trier of fact that was

15.

responsible only for determining whether such circumstances were proved (and not for making the ultimate sentencing decision)"].) However, Senate Bill No. 567 was already part of the legal landscape at the time of Radillo's sentencing hearing.

At the hearing, trial counsel explained to the court that the facts underlying the aggravating circumstances had to be stipulated to or proven beyond a reasonable doubt. Because the sentencing hearing occurred after the enactment of Senate Bill No. 567, trial counsel had the incentive and opportunity to challenge the forensic evaluator's findings in the mental health report, as well as the evidence showing that Radillo had beaten and threatened to kill his father. We therefore presume the evidence presented by trial counsel at the sentencing hearing was the sum total of the evidence available. Radillo's assertion to the contrary is too speculative to support his claim of reversible error.

## II.    The Trial Court Complied with Assembly Bill No. 124

Radillo further contends that the trial court failed to consider that certain factors contributed to the commission of the offense (see § 1170, subd. (b)(6)(B)), including the fact that he was 20 years old when the crime occurred, that he has a mental illness, and that he suffered physical and emotional abuse throughout his childhood. We conclude the record shows that the trial court considered these factors, but found "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (*Ibid*.)

### A.    Relevant Legal Principles

Effective January 1, 2022, Assembly Bill No. 124 amended section 1170 by adding paragraph (6) to subdivision (b), which provides: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse,

16.

neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (§ 1170, subd. (b)(6).) Section 1016.7, subdivision (b), defines a " 'youth' " as "any person under 26 years of age on the date the offense was committed."[6]

### B. Analysis

At the sentencing hearing, Radillo's family stated that he had been physically and psychologically abused as a child and they offered testimony describing his history of mental health issues. Further, trial counsel explained how Radillo's schizophrenia-related delusions contributed to his commitment offense. She also advised the trial court that under amended section 1170, it was required to impose the low term of incarceration if certain circumstances were contributing factors to the commission of the offense, including the fact that Radillo was under the age of 26 at the time of the offense. The amendments to which trial counsel was referring were subdivision (b)(6) of section 1170 and section 1016.7, which were added by the enactment of Assembly Bill No. 124. (Stats. 2021, ch. 695, § 5.1, adding § 1170, subd. (b)(6)(B); Stats. 2021, ch. 695, § 4, adding § 1016.7.)

The trial court acknowledged that Radillo's mental health issue had precipitated the crime and found that it was "a significant factor in mitigation." Nonetheless, the trial court imposed the upper term sentence. The fact that the trial court did not expressly state all of the factors it had considered in concluding "the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice" (§ 1170, subd. (b)(6)) does not mean that it failed to

---

**6** The Attorney General observes that the amendments to section 1170 making the lower term the presumptive sentence were initially made by Assembly Bill No. 124, but were incorporated into Senate Bill No. 567, which was later enacted.

consider Radillo's age at the time of the offense and the fact that he suffered abuse as a child.

We do not presume error upon a silent record. To the contrary, " '[a] judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To prevail, appellants must overcome this presumption by affirmatively establishing prejudicial error. We conclude that upon this record, Radillo has failed to meet his burden.

## **DISPOSITION**

The judgment of conviction is affirmed.

SMITH, J.

WE CONCUR:

FRANSON, Acting P. J.

PEÑA, J.

18.